**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

REVELYST ADVENTURE SPORTS LLC,

        Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

        Defendants.

Case No. 26-cv-00698

**Judge Thomas M. Durkin**

**Magistrate Judge Gabriel A. Fuentes**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Revelyst Adventure Sports LLC ("Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II. STATEMENT OF FACTS ................................................................................................. 2

    A. Plaintiff's Trademarks and Products .................................................................... 2

    B. Defendants' Unlawful Activities ........................................................................... 4

III. ARGUMENT ..................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ......................... 5

    B. Plaintiff Will Likely Succeed on the Merits .......................................................... 6

    C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ................................................................... 8

    D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction ................................................................... 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ................................................ 10

    A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement ........ 10

    C. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the  Is Appropriate ................................................................ 12

    D. Preventing the Fraudulent Transfer of Assets Is Appropriate ..................................... 12

    E. Plaintiff is Entitled to Expedited Discovery .................................................................... 13

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ............................................. 14

VI. CONCLUSION ................................................................................................................. 14

## MEMORANDUM OF LAW

### I.       INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants"). Plaintiff's request for injunctive relief only applies to Defendants identified in the accompanying proposed Temporary Restraining Order. Plaintiff has confirmed that the listings reflected in the submitted screenshots or another infringing listing for these Defendants were active within the last two months.  See Declaration of Justin R. Gaudio ("Gaudio Decl.") at ¶ 13. As alleged in Plaintiff's Complaint, Defendants are offering for sale and/or selling unauthorized and unlicensed products using counterfeit and infringing versions of Plaintiff's federally registered trademarks (the "Counterfeit Fox Racing Products") through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Counterfeit Fox Racing Products.  Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.  Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations. The e-commerce platforms used by Defendants – including Amazon, eBay, Walmart, Temu, TikTok, and PayPal – fail to adequately subject new sellers to verification and confirmation of

---

[1] The e-commerce store URLs are listed on Schedule A to the Complaint under Online Marketplaces.

their identities, allowing counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of Counterfeit Fox Racing Products on their platforms. Thus, Plaintiff is forced to file this action to discover the full scope of the infringement and attempt to stop Defendants' counterfeiting of Plaintiff's federally registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Fox Racing Products on U.S.-facing e-commerce platforms. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Trademarks and Products

Plaintiff has been designing, developing, and marketing motocross and mountain biking gear and apparel under its Fox Racing brand for many years. See Declaration of Paul Mills (the "Mills Declaration") at ¶ 4. The Fox Racing brand is famous around the world for high quality products that seamlessly blend innovation with style. *Id*. Products sold under the Fox Racing brand now include branded gear, backpacks, apparel, outerwear, and products designed for motocross, mountain biking, wake boarding, surfing, and other extreme sports (collectively, the "Fox Racing Products"). *Id*. at ¶ 6.

Fox-sponsored riders have won over forty National Motocross and Super Cross Championships, further cementing Fox Racing's place as the global leader in motocross and mountain biking gear and apparel. *Id*. at ¶ 7. Fox Racing Products have also been the subject of extensive unsolicited publicity resulting from their stylish, high-quality, and innovative designs.

*Id*. at ¶ 11. The Fox Racing brand is a multi-million-dollar brand, and Fox Racing spends considerable resources marketing and protecting it. *Id*. at ¶¶ 11, 15.

Plaintiff has used FOX RACING and other trademarks for many years and has continuously sold products under the FOX RACING and other trademarks (collectively, the "FOX RACING Trademarks"). *Id*. at ¶¶ 9-10. As a result of its long-standing use, Fox Racing owns common law trademark rights in its FOX RACING Trademarks. *Id*. at ¶ 9.

In addition to common law trademark rights, Fox Racing has registered several of its FOX RACING Trademarks with the United States Patent and Trademark Office. *Id*. The U.S. registrations for the FOX RACING Trademarks are valid, subsisting, and in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id*. at ¶ 10. The FOX RACING Trademarks are distinctive when applied to the Fox Racing Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. *Id*. at ¶ 12. The registrations for the FOX RACING Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the FOX RACING Trademarks pursuant to 15 U.S.C. § 1057(b). The FOX RACING Trademarks have become famous throughout the United States and around the world. *Id*. at ¶ 11.

Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the FOX RACING Trademarks. *Id*. at ¶¶ 11, 15. As a result, products bearing the FOX RACING Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. *Id*. at ¶ 15.

3

### B. Defendants' Unlawful Activities

The success of the Fox Racing brand has resulted in significant counterfeiting of the FOX RACING Trademarks. Mills Declaration at ¶ 16. Consequently, Fox Racing has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Fox Racing has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Fox Racing Products to consumers in this Judicial District and throughout the United States. *Id.*

Fox Racing's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Counterfeit Fox Racing Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. *Id.* at ¶¶ 17-26. If Defendants provide additional credible information regarding their identities, Fox Racing will take appropriate steps to amend the Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the FOX RACING Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65 (b). The entry of an *ex parte* TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the FOX RACING Trademarks and preserve the *status quo* until a hearing can be held.

4

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

Personal jurisdiction is proper over Defendants. Defendants have structured their business to target the United States market, including Illinois, by accepting payment from and agreeing to ship Counterfeit Fox Racing Products to residents of Illinois. On information and belief, Defendants have transacted business in the United States, including Illinois. See [1] at ¶¶ 2, 21, 29-30; *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624–27 (7th Cir. 2022); *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276-79 (2d Cir. 2024).

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*,

971 F.2d 6, 11 (7th Cir. 1992)). Under "the sliding scale approach[,]"the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Plaintiff Will Likely Succeed on the Merits

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

In this case, the FOX RACING Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Mills Declaration at ¶ 9-12. The registrations for the FOX RACING Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 10. The registrations for the FOX RACING Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the FOX RACING Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the FOX RACING Trademarks, and none of the Defendants are authorized retailers of Fox Racing Products. Mills Declaration at ¶ 19. Thus, Plaintiff satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479

6

(7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the FOX RACING Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiff has submitted extensive documentation showing that Defendants are selling Counterfeit Fox Racing Products that look similar to genuine Fox Racing Products and use infringing and counterfeit marks identical to the FOX RACING Trademarks. Both Plaintiff and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Fox Racing Products. Mills Declaration at ¶¶ 19-20. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Fox Racing Products from Counterfeit Fox Racing Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Fox Racing Products to purchase Counterfeit Fox Racing Products instead. *Id.* at ¶¶ 19-20. In that regard, Defendants advertise Counterfeit Fox Racing Products using the FOX RACING Trademarks. *Id.* at ¶19-20. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Fox Racing Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267

F.3d 660, 685 (7th Cir. 2001).  Accordingly, Plaintiff is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

      **C.**      **There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm.  15 U.S.C. § 1116(a).  Moreover, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)).  Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted).  "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988).

Defendants' unauthorized use of the FOX RACING Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales.  Mills Declaration at ¶¶ 27-31.  The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief.  *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law).

Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Mills Declaration at ¶ 32.

Finally, Plaintiff is also likely to be irreparably harmed if an asset restraint is not entered. *See infra generally*. Since Defendants are individuals or businesses who reside in China or other foreign jurisdictions with no U.S. presence, Plaintiff is likely to be irreparably deprived of its equitable profits remedy without an injunction. *See Kay v. Individual*, No. 22-cv-3033-RJD, 2023 U.S. Dist. LEXIS 117379, at *8-9 (S.D. Ill. Apr. 14, 2023).

### D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit Fox Racing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement

An *ex parte* TRO is necessary and justified in this case given the unique circumstances of offshore e-commerce counterfeiting. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Here, each Defendant is engaged in the inherently deceptive act of intellectual property infringement from outside the U.S. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132-33 (2d Cir. 2014) (confirming authority to issue TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (affirming TRO and preliminary

10

injunction freezing assets of defendants selling counterfeit goods); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990) ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds."), *aff'd*, 970 F.2d at 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995) (internal quotations omitted) (affirming a preliminary injunction freezing assets of U.S.-based defendants who arranged for making counterfeits in China). The Court should also consider actions taken by similarly situated defendants to evade court orders and/or move proceeds of infringing sales offshore. *See Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008, at *10; *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979).

Plaintiff has submitted evidence showing that Defendants are selling Counterfeit Fox Racing Products and operate from China or other foreign jurisdictions. *See* Mills Declaration at ¶ 17. Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has established that Defendants operate offshore in China or other foreign jurisdictions. Mills Declaration at ¶ 17. Plaintiff has concurrently filed a declaration evidencing that infringers like Defendants set up new e-commerce stores, and transfer proceeds of infringing sales to bank accounts outside the United States once they have received notice of a lawsuit. Gaudio Declaration at ¶¶ 5-10. Defendants are likely aware that it would be "difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008 at *25; Gaudio Declaration at ¶¶ 11-12.

11

**B.     A Temporary Restraining Order Immediately Enjoining Defendants'
Unauthorized and Unlawful Use of the Fox Racing Trademarks Is
Appropriate**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the FOX RACING Trademarks, or substantially similar marks, on or in connection with all e-commerce stores operating under the Seller Aliases. Courts have regularly authorized injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corp. v. P'ships, et al.,* No. 13-cv-00167, 2013 U.S. Dist. LEXIS 47248, at \*24 (N.D. Ill. Mar. 27, 2013).

**C.     Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit Fox Racing Products is not impaired.[2] Issuing an *ex parte* restraint will ensure Defendants' compliance. If an asset restraint is not granted, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. On information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

"[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a)." *Johnson & Johnson v. Advanced Inventory Mgmt.*, 2020 U.S. Dist. LEXIS 248831, at \*8 (N.D. Ill. July 20, 2020) (internal citations omitted); *see also Animale Grp. Inc.*, 256 F. App'x at 709 (collecting cases); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (upholding asset restraint to preserve profits remedy). Plaintiff has shown a strong likelihood of succeeding

---

[2] Plaintiff has filed a Motion for Leave to File Under Seal certain documents for this same reason.

on the merits of its trademark infringement and counterfeiting claim, so according to 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover . . . defendant's profits." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. The Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Plaintiff is Entitled to Expedited Discovery

"[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff requests expedited discovery to identify names and financial accounts Defendants use for their operations. The expedited discovery requested is limited to what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g.*, *Deckers Outdoor Corp.*, 2013 U.S. Dist. LEXIS 47248, at *27-29. Plaintiff's asset restraint may have little meaningful effect without corresponding expedited discovery.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and false designation of origin, Plaintiff requests that the Court require Plaintiff to post a bond of no more than fourteen thousand dollars ($14,000) ($1,000 per defendant subject to the Temporary Restraining Order).

## VI. CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff requests that the Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 23rd day of January 2026.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Trevor C. Talhami
Rachel M. Ackerman
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ttalhami@gbc.law
rackerman@gbc.law

*Counsel for Plaintiff Revelyst Adventure Sports LLC*

14