Docusign Envelope ID: 4D46CA52-4618-435B-B55D-BBEC4D516698

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REVELYST ADVENTURE SPORTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 26-cv-00698<br><br>**Judge Thomas M. Durkin**<br><br>**Magistrate Judge Gabriel A. Fuentes** |

**Declaration of Paul Mills**

Docusign Envelope ID: 4D46CA52-4618-435B-B55D-BBEC4D516698

## DECLARATION OF PAUL MILLS

I, Paul Mills, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am the Brand Protection Analyst for Revelyst, Inc., the parent company of Plaintiff Revelyst Adventure Sports LLC ("Fox Racing" or "Plaintiff"). I am knowledgeable of or have access to business records concerning all information referenced herein including, but not limited to, Fox Racing's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, and media coverage. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff Revelyst Adventure Sports LLC is a company organized and existing under the laws of the State of California, having its principal place of business at 16752 Armstrong Avenue, Irvine, California 92606.

4. Plaintiff has been designing, developing, and marketing motocross and mountain biking gear and apparel under its Fox Racing brand for many years. The Fox Racing brand is famous around the world for high quality products that seamlessly blend innovation with style.

5. Fox Racing began in 1974 with Geoff Fox's vision — that his high-performance suspension and engine components could give riders an on-track advantage. Driven to prove this on his terms, he founded team Moto-X Fox to compete against the might of the Japanese factory teams. The team quickly became the top non-factory riders in the competitive AMA 125 National Championship series, proving that the products he and his team designed and

built were the best money could buy. During the series, Team Moto-X Fox riders wore bright red, yellow, and orange gear which became an instant hit with fans and the catalyst for the Fox Racing brand.

6. In the many years since that fateful Championship series, Fox Racing has become one of the most identifiable brands in the world. Products sold under the Fox Racing brand now include branded gear, backpacks, apparel, outerwear, and products designed for motocross, mountain biking, wake boarding, surfing, and other extreme sports (collectively, the "Fox Racing Products").

7. Over the years, Fox Racing has continued to elevate athletic performance through progressive innovation, including sponsoring numerous riders under the Fox Racing brand. These Fox-sponsored riders have won over forty National Motocross and Super Cross Championships, further cementing Fox Racing's place as the global leader in motocross and mountain biking gear and apparel.

8. Fox Racing Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized retailers, and the official foxracing.com website.

9. Plaintiff incorporates a variety of distinctive marks in the design of its various Fox Racing Products. As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks. Plaintiff has also registered its trademarks with the United States Patent and Trademark Office. Fox Racing Products typically include at least one of Plaintiff's registered trademarks. Often, several Fox Racing marks are displayed on a single Fox Racing product. Plaintiff uses its trademarks in connection with the marketing of its Fox Racing Products, including the following marks which are collectively referred to as the "FOX RACING Trademarks."

Docusign Envelope ID: 4D46CA52-4618-435B-B55D-BBEC4D516698

| Registration No. | Trademark |
|---|---|
| 3,736,401 | FOX |
| 3,276,323<br>3,276,324 | FOX RACING |
| 2,181,243<br>2,189,804<br>2,192,660<br>2,232,648 | |
| 3,143,175<br>3,160,138 | |
| 3,309,293<br>3,309,294<br>3,309,295<br>3,309,296 | |
| 6,256,548 | |
| 2,188,305<br>2,194,132<br>2,192,661<br>2,234,764 | |
| 3,151,681<br>3,151,835 | |
| 7,116,612 | |

10. The above U.S. registrations for the FOX RACING Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The FOX RACING Trademarks have been used exclusively and continuously by Plaintiff, some for many years, and have never been abandoned. Attached hereto as **<u>Exhibit 1</u>** are true and correct copies of the United States Registration Certificates for the FOX RACING Trademarks included in the above table.

11. The FOX RACING Trademarks are exclusive to Plaintiff and are displayed extensively on Fox Racing Products and in Plaintiff's marketing and promotional materials. The Fox Racing brand has long been among the most popular extreme sportswear lines in the world and has been extensively promoted and advertised at great expense. In fact, Plaintiff has expended millions of dollars annually in advertising, promoting, and marketing featuring the FOX RACING Trademarks. Fox Racing Products have also been the subject of extensive unsolicited publicity resulting from their stylish, high quality, and innovative designs. Because of these and other factors, the Fox Racing name and the FOX RACING Trademarks have become famous throughout the United States and around the world.

12. The FOX RACING Trademarks are distinctive when applied to the Fox Racing Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. The FOX RACING Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the FOX RACING Trademarks is of incalculable and inestimable value to Plaintiff.

13. Plaintiff operates an e-commerce website where it promotes and sells genuine Fox Racing Products at foxracing.com. Sales of Fox Racing Products via the foxracing.com website

represent a significant portion of Plaintiff's business. The foxracing.com website features proprietary content, images, and designs exclusive to Fox Racing.

14. Plaintiff's innovative marketing and product designs have enabled Fox Racing to achieve widespread recognition and fame, making the FOX RACING Trademarks well-known marks. The widespread fame, outstanding reputation, and significant goodwill associated with the Fox Racing brand have made the FOX RACING Trademarks valuable assets of Plaintiff.

15. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the FOX RACING Trademarks. As a result, products bearing the FOX RACING Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Plaintiff is a multi-million-dollar operation and Fox Racing Products have become among the most popular of their kind in the world.

16. The success of the Fox Racing brand has resulted in significant counterfeiting of the FOX RACING Trademarks. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products, including apparel, motocross and mountain biking gear, and other merchandise using infringing and counterfeit versions of the FOX RACING Trademarks (the "Counterfeit Fox Racing Products") to consumers in this Judicial District and throughout the United States.

17. I perform, supervise, and/or direct investigations related to Internet-based infringement of the FOX RACING Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Fox Racing Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Fox Racing Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Fox Racing Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Fox Racing and do not have the right or authority to use the FOX RACING Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **<u>Exhibit 2</u>**.

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, from U.S. consumers and, on information and belief, have sold Counterfeit Fox Racing Products to residents of Illinois.

19. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be

authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the FOX RACING Trademarks and none of the Defendants are authorized retailers of genuine Fox Racing Products.

20. Many Defendants also deceive unknowing consumers by using the FOX RACING Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Fox Racing Products. Other e-commerce stores operating under the Seller Aliases omit using FOX RACING Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Fox Racing Products.

21. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Fox Racing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

24. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

26. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Fox Racing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the FOX RACING Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Fox Racing Products into the United States and Illinois over the Internet.

27. Monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control of and damage to Plaintiff's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill by acts of infringement.

28. Plaintiff's goodwill and reputation are irreparably damaged when the FOX RACING Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff. Moreover, brand confidence is damaged which can result in a loss of future sales and market share. The extent of harm to Plaintiff's reputation and goodwill, and the possible diversion of customers due to loss in brand confidence, are largely unquantifiable.

29. Plaintiff is further irreparably harmed by the unauthorized use of the FOX RACING Trademarks because counterfeiters take away Plaintiff's ability to control the nature and quality of the Counterfeit Fox Racing Products. Loss of quality control over goods offered for sale or sold under the FOX RACING Trademarks and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable.

30. The use of the FOX RACING Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff is likely causing and will continue to cause consumer confusion which weakens Plaintiff's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Fox Racing Products they have purchased originated from Fox Racing will come to believe that Fox Racing offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Fox Racing Products, resulting in a loss or

undermining of Plaintiff's reputation and goodwill. Indeed, there is damage to Plaintiff's reputation and goodwill even if consumers know that the goods they are purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Fox Racing Products worn or used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Fox Racing and the FOX RACING Trademarks. Such post-sale confusion results in damage to Plaintiff's reputation and correlates to a loss of unquantifiable future sales.

31. Plaintiff is further irreparably damaged due to a loss of exclusivity. Fox Racing Products are meant to be exclusive. Plaintiff's extensive marketing efforts and innovative designs are aimed at growing and sustaining sales. The FOX RACING Trademarks are distinctive and signify to consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high-quality standards. When counterfeiters use the FOX RACING Trademarks to offer for sale or sell goods without Plaintiff's authorization, the exclusivity of the Fox Racing Products and Plaintiff's reputation are damaged and eroded, resulting in a loss of unquantifiable future sales.

32. Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 20th day of January 2026 at Boise, Idaho.



Paul Mills